No. 594

First Circuit

## HERRIN v. LAUNDRY & DRY CLEANING SERVICE, INC.

(May 6, 1930. Opinion and Decree.)
(June 9, 1930. Rehearing Refused.)
(July 19, 1930. Writ of Certiorari and Review Refused by Supreme Court.)

Morgan & Simmons, of Covington, attorneys for plaintiffs, appellees.

Harvey E. Ellis and R. D. Jones, of Covington, attorneys for defendant, appellant.

LeBLANC, J. The plaintiffs in this case are Buren Herrin and Priscilla Davis Herrin, his wife. Their son, John P. Herrin, aged sixteen years at the time, was injured in an automobile accident on October 10, 1928, and died from the injuries received, four days later. They instituted this suit against the Laundry & Dry Cleaning Service, Incorporated, who, they allege in their petition, is responsible in damages for the death of their son and the wreck of their automobile, by reason of the careless and reckless driving of one of its trucks by one of its agents and employees while acting in the scope of his employment.

They aver that on the date mentioned, at about 4:30 o'clock p. m., their son, with his mother, one of the petitioners, was driving their Ford runabout automobile on the gravel-surfaced highway in St. Tammany parish, over what is known as the Honey Island road. The road is described as being located on the top of a high fill or dump, the sides of which are almost precipitous and extend downward a distance of forty or fifty feet. The impression conveyed is that it is a dangerous piece of road, and therefore unusual care and caution should be taken by automobile drivers passing over it.

They aver further that on reaching a point on said highway about midway between the bridges which span East and West Pearl rivers, one of defendant's laundry trucks, driving in the same direction as their son, approached their car from the rear without signaling; that their son was driving on the extreme right-hand side of the road but the driver of the truck, nevertheless, when abreast of their car, cut sharply to the right, thereby striking their car and precipitating it down the steep embankment over which the road is constructed.

They attribute the collision, which resulted in their son's death and the wrecking of their car, to the criminal negligence and utter recklessness of the defendant's agent and employee in cutting back into the right side of the road before he had fully passed their car.

They asked for damages in the sum of $14,300, of which $7,000 is claimed in their own right for their grief, mental anguish, and sorrow, as well as the deprivation of the companionship of their son; $7,000 as suuccessors to their son's right of action for his suffering from the time of the accident to the time of his death, and $300 for the value of the automobile which they allege was destroyed.

The defendant filed no special pleas or defenses, and in its answer denies practically every allegation of fact contained in the plaintiffs' petition.

On this issue of fact the case went to trial and the lower court awarded judgment in favor of the plaintiffs in the sum of $7,300. From this judgment the defendant has appealed and the plaintiffs have answered the appeal asking that the judgment be increased to $10,300.

The defendant has filed in this court an exception of no right or cause of action, but, in as much as it raises only questions of fact arising from the evidence, it will be referred to the merits for consideration with all of the evidence in the case.

The defendant having contented itself with merely denying plaintiffs' allegations as to how the accident happened, but, having admitted at the beginning of the trial that plaintiffs' son had died as a result of the injuries which he received on October 10, 1928, the decision of the case will have to resolve itself in a determination of the

sole question whether or not defendant's truck collided with the plaintiffs' car on that day and knocked it down the steep embankment, thereby causing the death of young Herrin and the damage to the Ford automobile which resulted.

Mrs. Buren Herrin, the mother, is the only eye witness to the accident who testified. As we read the evidence, a man by the name of Simmons who was going in the opposite direction in his automobile, which was being driven by a negro chauffeur, may have seen it from a distance, but neither he nor the chauffeur was called as a witness. Their absence from the witness stand is commented on at length in the briefs on both sides, but without any explanation. It is to be regretted that they did not testify, because, assuming that they took the part the other witnesses say they did in rendering assistance, and that they made the statements they are accredited with, their testimony would have been of material assistance to the court in deciding the most important question in the case.

The testimony of Mrs. Herrin is to the effect that, on the date of the accident, she and her son were driving home to Talisheek, La., from Picayune, Miss. They left Picayune at about 4 o'clock in the afternoon and it was approximately 4:30 when the accident happened. Her son, who she says was a cautious driver, was driving their car on the right-hand side of the road in the direction in which they were going. The road at the point where the accident occurred is wide, and there was ample room for another car to pass. She saw a white closed-in truck just as it started to pass them, the driver of the truck "tooting" the horn at the same time. She observed that there were two men in the truck as it was passing them. The driver cut in front of them, the rear end of the truck striking the front end of their car

and throwing it down the embankment. He did not stop, but speeded on in the direction of Slidell. Almost immediately, she says, the car of the man named Simmons reached them and he and his chauffeur helped them out of the wreck. Closely following the Simmons' car, and coming from the opposite direction, another car in which were a Mr. Crain and a Mr. Newhauser arrived, and it was to them, she says, that Mr. Simmons made the statement "that it was a white truck that knocked them off." Mr. Crain and Mr. Newhauser then took them in their car to drive them to Slidell. Mr. Crain, who was driving, ran his car at a very fast rate of speed to try to overtake the white truck, but never did. On arriving at Pearl River he stopped to telephone to Mr. Percy A. Saxon, chief of police at Slidell, to be on the lookout for the truck and to hold it there until they arrived. On reaching Slidell they learned that the chief of police had arrested two men driving a white closed-in truck which she unhesitatingly identified as the truck that had collided with their car. She also states that she recognized the two men as those who were in the truck when it struck them.

In all of these statements of facts she is substantially corroborated by Mr. Crain, Mr. Newhauser, and Mr. Saxon, in so far as they became connected with any of them.

The truck which was stopped at Slidell at about 5 o'clock, was the first truck that came over the road from Pearl River after the chief of police had been notified of the accident. It was a white closed-in laundry truck, with defendant's trade name "Bijou-Swiss Laundry" printed in bold letters on the sides. The driver of that truck was one James Straughan, defendant's employee, who was at the time engaged in his work of collecting laundry.

This evidence sufficiently establishes the fact that this was the truck which passed the plaintiffs' car at the point where this accident occurred and at the time it occurred on October 10, 1928. The question now comes, Did it strike the Ford car and knock it down the embankment, as Mrs. Herrin swears it did?

The testimony of Mr. Simmons and his chauffeur would have been, as already intimated, of great benefit in reaching the answer to that question. Being deprived of it, we have to rely on what there is in the record. It must be remembered, however, that the statements these parties are reported to have made at the moment of the accident stand uncontradicted, and these statements, properly admitted in evidence, give strong support to Mrs. Herrin's testimony. Against this positive testimony and the attending circumstances, we have that of the two men who were in the truck, which may be said to differ in some respect. One of them, the guest who was taking a ride with the driver, is most positive in his denial of all that was testified to by Mrs. Herrin and her witnesses. His testimony strikes us as that of a witness who wants to create an impression of being indifferent or unconcerned about what happened. The other, the driver of the truck, is somewhat evasive and not near as positive in his statements. The substance of his testimony is that "he does not remember" ever having struck any other automobile. In weighing the evidence of these two witnesses, we have given due consideration to the expression of the district judge as to how they impressed him as appearing to be "clean cut and upright young men" but in connection with this statement we have also to consider his other remark to the effect that he would refrain from commenting on the evidence to any extent, for the reason that the driver of the truck was under criminal indict-

ment in his court and he "would not under any circumstances wish to prejudice this young man in the defense of that case." Besides, it must be borne in mind, in this connection also, that notwithstanding the lower court's favorable comment about these two men, judgment was against the defendant.

Counsel for the defendant lays great stress in argument on the fact that the physical evidence with regard to the condition of the cars, which should be apparent in a collision such as this is alleged to have been, is totally lacking in this case, and its absence is corroborative of its witnesses' testimony. The evidence on this point is by no means one-sided. The hub cap on the wheel of the Ford which Mrs. Herrin says was struck bore a dent or mark which would indicate that it had been so struck. The absence of any marks or depression on the rear fender or wheel of the truck can be explained, we think, when we make a comparison of the respective weights of the automobiles, the striking one being much heavier than the one which was struck, and when we further consider the fact that the blow must have been a slanting one given while the two cars were traveling in the same direction.

We are of the opinion, after a careful consideration of all the evidence in the case, that the proof strongly supports Mrs. Herrin's version as to how this accident happened. Having reached this conclusion, it follows that we have to hold the driver of the truck guilty of gross negligence, and consequently, defendant is liable in damages to the plaintiffs.

In allowing $7,300, we think the district judge followed closely the awards generally made in cases of this kind, and his finding on this point will not be disturbed.

The judgment appealed from is affirmed.